OPINION
{¶ 1} Defendant-appellant, Wayne M. Hopkins, appeals from the judgment of the Franklin County Court of Common Pleas, whereby a jury convicted appellant of kidnapping and felonious assault.
 {¶ 2} The Franklin County Grand Jury indicted appellant on one count of kidnapping, a first-degree felony, in violation of R.C. 2905.01, two counts of attempted rape, second-degree felonies, in violation of R.C. 2907.02 and 2923.02, and one count of felonious assault, a second-degree felony, in violation of R.C. 2903.11. The charges stem from an incident that took place during the early morning hours of June 7, 2003.
 {¶ 3} Appellant pled not guilty, and a jury trial commenced. At trial, plaintiff-appellee, the State of Ohio, first called Wendy Flowers to testify. Flowers worked for the Franklin County Sheriff's Office and answered a 911 emergency phone call from the victim. While Flowers testified, appellee played the 911 tape, which depicted the following. The victim initially stated: "Help me. Help me. Help me[,]" and indicated that she was being kidnapped. (Vol. I Tr. at 61.) At one point, the victim stated to appellant: "Sir, I'm talking to my sister. Can you just tell my sister that I'm not going to be home soon" and "[l]et me talk to my sister, please, for one second." (Vol. I Tr. at 62.) The victim then proceeded to talk to Flowers as if she were her sister, and, at one point during the conversation, appellant would talk with Flowers, apparently thinking that he was talking with the victim's sister. Next, at Flowers' prompting, the victim asked appellant to tell her where they were and where he was taking her. However, appellant would not tell the victim where they were, and appellant provided inconsistent locations when telling the victim where he was taking her. Ultimately, appellant stated: "Give me my phone. Bitch, give me my phone[,]" and the call ended. (Vol. I Tr. at 69.)
 {¶ 4} Flowers also identified for appellee a transcript of the 911 phone call. Appellee, not an official court reporter, transcribed the 911 call. Flowers verified that the transcript accurately reflected the call.
 {¶ 5} Next, the victim testified to the following on appellee's behalf. On the evening of June 6, 2003, the victim was out socializing with her husband and another couple. The victim drank "a couple of beers and a shot" and admitted that "[a]s soon as [she] drank a half a beer [she] was under the influence" of alcohol. (Vol. I Tr. at 93, 158.) The victim and her husband went home between 11:00 p.m. and 12:00 midnight. When the victim returned home, she decided to check on her pets located in a barn on another street. The victim proceeded to walk to the barn to check on her pets and, afterwards, walked back to her home.
 {¶ 6} On her way home, appellant grabbed her from behind. The victim "struggled and ended up in a vehicle." (Vol. I Tr. at 96.) Appellant had a hold of her while she was in the vehicle, and "[m]ost of the time * * * it seemed that [appellant] always had ahold of [her]." (Vol. I Tr. at 144-145.)
 {¶ 7} During the incident, appellant called the victim a "bitch" and said that she was "gonna be his party girl." (Vol. I Tr. at 99.) At one point, appellant forced the victim's hands onto his penis. Another time, appellant pulled the victim's head toward his erect penis and told the victim "that [she] had to take care of that[.]" (Vol. I Tr. at 100.) Appellant also pulled out a condom and stated "that he was going to use this so [the victim] wouldn't give him anything[.]" (Vol. I Tr. at 100.)
 {¶ 8} During the course of events, the victim ended up in the back seat and wrote part of her name on the seat. The victim started to write her name on the seat because "[she] knew [she] was going to die and someone needed to know that [she] had been there and who had done it." (Vol. I Tr. at 136.) The victim also wrote the license plate letters to appellant's vehicle on her hand because "[s]omeone needed to know." (Vol. I Tr. at 136.)
 {¶ 9} Likewise, the victim called 911 on a phone. Appellee then re-played for the jury the 911 recording noted above, and appellee provided the jury with the transcript of the 911 call. Appellant's defense counsel objected to appellee providing the transcript to the jury. The trial court overruled the objection, admitted the transcript into evidence, and gave the following instruction in regards to the transcript:
You are being provided with a transcript of the initial 911 call placed by [the victim]. This is being provided to assist you in understanding the conversation on the tape. However, it is not intended to override your interpretation of what is actually being said on the tape. It is to be used only as an aid and not as a substitution for the content of that tape.
(Vol. I Tr. at 104.)
 {¶ 10} After appellee replayed the 911 recording, the victim verified that the transcription of the recording accurately reflected the phone call. The victim also testified to the following. After the victim made the 911 call, appellant started yelling: "[Y]ou called the police, bitch, why did you call the police" and that she "fucked up." (Vol. I Tr. at 116.) Next, appellant struck the victim several times in her face with his fist.
 {¶ 11} Ultimately, the victim remembered waking up in a dark parking lot. Appellant and his vehicle were gone, and the victim's pants were down. The victim found a phone booth and called 911 again. After the second 911 call, the victim went to the hospital. The victim claimed that she sustained a broken nose and a concussion, and that her teeth were "knocked loose." (Vol. I Tr. at 126.)
 {¶ 12} On cross-examination, the victim verified that she told law enforcement at the hospital that appellant vaginally raped her. However, the victim admitted that she subsequently learned that no DNA evidence supported the allegation.
 {¶ 13} Medic Clark Smith also testified on appellee's behalf. Smith testified that he responded to the victim's second 911 call and saw that the victim had blood on her shirt, hands, and face. Moreover, Smith authenticated photographs of the victim taken at the scene, and verified that the victim stated that she thought she had been unconscious. Further, on cross-examination, Smith verified that the medic report does not mention the victim sustaining injuries to her teeth.
 {¶ 14} Franklin County Sheriff's Detective Al Judy testified to the following on appellee's behalf. When Judy first spoke with appellant about the incident, appellant denied any involvement and stated he never had contact with the victim. However, when talking with appellant, Judy noticed swelling on appellant's right hand knuckle area. Subsequently, at the end of Judy's investigation, he arrested appellant in regards to the June 7, 2003 incident. After the arrest, appellant again agreed to talk with Judy. Appellant told Judy that "he had made a mistake the first time. He wanted to be totally honest this time." (Vol. I Tr. at 236.) Appellant told Judy that he recalled meeting the victim on June 7, 2003. Appellant told Judy that the victim wanted to trade sex for drugs or money, and appellant tried to obtain drugs for the victim. Appellant also told Judy that, because appellant was unable to obtain drugs, the victim "asked him to take her back where they had first gotten together." (Vol. I Tr. at 237.) Appellant refused, they "got physical" and appellant eventually struck the victim in the face. (Vol. I Tr. at 237.) Appellant also admitted to drinking during the evening hours of June 6, 2003, and early morning hours of June 7, 2003.
 {¶ 15} On cross-examination, Judy noted that, upon talking with the victim at the hospital, he began investigating a "reported rape, kidnapping, and felonious assault." (Vol. I Tr. at 242.) Judy also noted that law enforcement took physical evidence from the victim through a rape kit, and also took physical evidence from appellant. Lastly, Judy testified that a comparison of the physical evidence through DNA testing failed to establish that appellant vaginally raped the victim.
 {¶ 16} Next, the parties stipulated to the admissibility of the victim's hospital records. According to the hospital records:
* * * The patient actually has now told 3 different stories. First story is that she was at a party and was assaulted. Second story is that she was walking down the street with her dog and got assaulted. Third story is that she was in a barn, walking back to her house and got assaulted. * * *
Likewise, nothing in the hospital records indicate that the victim sustained injuries to her teeth.
 {¶ 17} Appellant testified to the following on his own behalf. On the evening of June 6, 2003, appellant socialized with friends at a bar and drank alcohol. On his way home during the early morning hours of June 7, 2003, appellant saw the victim walking down the road. The victim waved at appellant, and he stopped to talk to her. The victim walked toward appellant's vehicle and stated that she was looking for drugs and wanted to party. Appellant assumed that she wanted to engage in sexual intercourse and let her into the vehicle. The victim had appellant drive toward some apartments, but appellant told the victim that she would have to walk up to the apartments by herself because he knew that law enforcement heavily patrolled the area. The victim did not want to walk to the apartments, and appellant decided to try to call a friend to obtain some drugs for the victim so that she would not have to walk to the apartments. During the course of events, appellant's vehicle stopped running, and he needed to call his wife to get a ride home. However, appellant did not want the victim present when he called his wife for a ride. Yet, the victim would not leave the vehicle. Rather, the victim obtained appellant's cell phone and called 911, although he thought that the victim was actually calling her sister for a ride. During the phone conversation, the victim was hitting appellant and, eventually, he hit the victim. Appellant proceeded to get his cell phone back, and the victim ran away and got into the passenger seat of a tractor trailer.
 {¶ 18} During closing argument, appellee noted that appellant "is not charged with rape. Keep that in mind. But [the victim] did get checked out to be safe." (Vol. II Tr. at 153.)
 {¶ 19} Appellant's defense counsel stated, during closing argument:
* * * They performed probably one of the most precise scientific testing that is available to us in present day medical society. That's the DNA testing. They found no DNA evidence to support any allegation of rape in this [case]. Absolutely not. Contrast that with her representation to the hospital that she was the victim of an actual rape. In fact, I will suggest to you that is not until after she's gone to the hospital, after they're questioning her credibility, after she finds out how this is going that she then comes up and says that this was an attempted rape as opposed to an actual rape * * *.
(Vol. II Tr. at 187.)
 {¶ 20} Appellee replied on rebuttal closing argument:
* * * Just because there has not been a charge of rape and just because [the victim] doesn't remember it doesn't mean she wasn't raped. Doesn't mean she didn't want to be checked out for potential sexual activity.
(Vol. II Tr. at 197.)
 {¶ 21} Appellant's defense counsel objected, and the trial court sustained the objection. Appellee then argued:
* * * Ladies and gentlemen, [the victim] could have vaginally been raped and she had every reason to report that to the hospital. The fact that no DNA was found in her vaginal cavity, can that be explained with condoms? Of course it can. * * *
(Vol. II Tr. at 197.)
 {¶ 22} Appellant's defense counsel again objected and moved for a mistrial. The trial court denied the motion, and sustained the objection in part and overruled the objection in part. The trial court sustained the objection "to the part where [appellee] can't argue that there was a rape because there's no charge of rape." (Vol. II Tr. at 1992-00.)
 {¶ 23} Appellee proceeded to argue:
* * * Ladies and gentlemen, [the victim] had every reason to tell them that she thought she had been raped. She woke up with her pants around her knees, not in the condition they had been in when she lost consciousness. And she'd also been told by [appellant] that he was going to use a condom because he didn't want her to give him anything. Certainly valid reasons for [the victim] to tell them that. Keep those things in mind.
(Vol. II Tr. at 200.)
 {¶ 24} The jury found appellant guilty of kidnapping and felonious assault, but not guilty of the two attempted rape counts. The trial court sentenced appellant accordingly.
 {¶ 25} Appellant appeals, raising three assignments of error:
ASSIGNMENT OF ERROR NO. 1:
A trial court abuses its discretion when it permits the state to enter into evidence the transcription of a 911 tape that was not transcribed by a certified court reporter.
ASSIGNMENT OF ERROR NO. 2:
A prosecutor engages in misconduct where she asserts that a victim could have been raped by the defendant, and the defendant has not been charged with the crime of rape.
ASSIGNMENT OF ERROR NO. 3:
The conviction of appellant is against the manifest weight of the evidence.
 {¶ 26} In his first assignment of error, appellant challenges the trial court's decision to admit into evidence a transcript of the victim's first 911 phone call. Appellant does not address the trial court's authority to allow the jury to review the transcript during deliberations or while listening to the 911 recording at trial. Rather, appellant's challenge concerns appellee, and not a certified court reporter, preparing the transcript. According to appellant, by admitting into evidence the transcript that appellee prepared, the trial court allowed appellee "to tell the jury in writing what [appellee] interprets the 911 tape to be saying," and "[i]n essence * * *, the trial court allowed [appellee] to usurp the power of the jury[.]" Thus, according to appellant, the trial court abused its discretion when it admitted into evidence the transcript that appellee, and not a certified court reporter, prepared. We disagree.
 {¶ 27} Although appellant refers to no case law to support his above contentions, we note that this court addressed an argument similar to appellant's in State v. Prysock (July 16, 1987), Franklin App. No. 86AP-492. In Prysock, the prosecution read, during closing arguments, from a self-prepared transcript of a defendant's taped interview with law enforcement. The defendant claimed, on appeal, that the trial court should not have allowed the prosecution to read from the transcript. "Impropriety is alleged in that the transcript, having been prepared by the prosecutor's office, contains [the defendant's] statement as interpreted by the state rather than by a court reporter." However, we found no error in the trial court's decision to allow the prosecution to utilize the transcript. We acknowledged that the jury also heard the taped interview and that "[i]t was within the jury's province" to ultimately consider the contents of the taped interview.
 {¶ 28} Here, as Prysock suggests, error does not stem from the trial court admitting into evidence the transcript of the 911 recording that appellee, not a court reporter, prepared. Likewise, under the dictates of Prysock, the trial court did not allow appellee to usurp the jury's powers when the trial court admitted into evidence the transcript that appellee prepared. As in Prysock, the jury here heard the 911 tape recording and, as trier of fact, was able to ultimately ascertain the contents of the 911 recording irrespective of appellee's transcription. Indeed, the trial court emphasized as such in its above noted jury instruction. Accordingly, we conclude that the trial court did not abuse its discretion in admitting into evidence appellee's transcription of the 911 recording. Therefore, we overrule appellant's first assignment of error.
 {¶ 29} Appellant's second assignment of error concerns appellee arguing during the rebuttal portion of closing argument that appellant could have vaginally raped the victim and, therefore, the victim had cause to inform law enforcement at the hospital that she thought she had been raped. Appellant contends that such comments rose to the level of prosecutorial misconduct and required the trial court to grant appellant's request for a mistrial. We disagree.
 {¶ 30} Courts afford prosecutors wide latitude in making closing arguments. State v. Benge (1996), 75 Ohio St.3d 136,141. Whether the prosecutor's remarks constitute misconduct requires analysis as to: (1) whether the remarks were improper; and (2) if so, whether the remarks prejudicially affected a defendant's substantial rights. State v. Noling,98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 91. "The touchstone of this analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Noling at ¶ 91, quoting Smith v. Phillips
(1982), 455 U.S. 209, 219.
 {¶ 31} "[I]t is well settled that a party cannot complain of [an] opponent's argument to the jury, where it amounts only to a reply in kind to matters argued" by the complaining party. Statev. Roland (Mar. 15, 1979), Cuyahoga App. No. 38393, citingState v. Swanson (1967), 9 Ohio App.2d 60; State v. Combs
(Nov. 7, 1983), Preble App. No. CA83-03-008. Here, appellee made the above statements in response to appellant's defense attorney's closing argument. Specifically, appellant's defense attorney attacked the victim's credibility by alleging that she originally told law enforcement at the hospital that appellant raped her, but later only claimed that appellant attempted to rape her upon discovering that no physical evidence connected appellant to vaginal rape. As such, appellee justifiably replied to appellant's defense counsel's attack on the victim's credibility and did not commit prosecutorial misconduct in making the above remarks. Therefore, we overrule appellant's second assignment of error.
 {¶ 32} In his third assignment of error, appellant contends that his kidnapping and felonious assault convictions are against the manifest weight of the evidence. We disagree.
 {¶ 33} In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror." State v. Thompkins (1997),78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown,
Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quotingState v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 34} Pursuant to R.C. 2905.01, the trial court instructed the jury that it could find appellant guilty of kidnapping if it determined that appellant:
* * * [B]y force or threat, removed [the victim] from the place where she was found and/or restrained [the victim] of her liberty for the purpose of facilitating the commission of any felony, to wit: felonious assault and/or attempted rape or flight thereafter and/or terrorizing or inflicting serious physical harm on the victim or another and/or engaging in sexual activity with the victim against the victim's will.
(Vol. II Tr. at 209-210.)
 {¶ 35} Likewise, pursuant to R.C. 2903.11, the trial court instructed the jury that it could find appellant guilty of felonious assault if it determined that appellant "knowingly caused serious physical harm to [the victim]." (Vol. II Tr. at 214.)
 {¶ 36} In raising the manifest weight argument, appellant does not suggest that the kidnapping and felonious assault convictions are based on insufficient evidence. Rather, appellant claims that the jury "lost its way" in believing the victim's testimony that appellant committed kidnapping and felonious assault. Appellant claims that the victim's testimony was not credible because the victim: (1) gave conflicting accounts about the incident, as noted in the hospital report; (2) alleged that appellant vaginally raped her, even though DNA evidence did not support such an accusation; (3) alleged that she sustained injuries to her teeth, even though the hospital and medic reports state nothing about such injuries; and (4) admitted to drinking alcohol on the night of the incident.
 {¶ 37} However, the record supports the victim's testimony that appellant committed kidnapping and felonious assault by restraining her liberty and, in the course of events, punching her in the face. Specifically, the hospital report indicates that the victim sustained a nose fracture, photographs depict the victim's bloody injuries, and appellant himself testified that he hit the victim. Likewise, evidence on the victim's own actions confirm that she did not willingly place herself into the incident, but, rather, appellant subjected her to the frightening experience. In particular, the victim wrote the license plate letters to appellant's vehicle on her hand, and tried to write her name on a seat in appellant's vehicle because "[she] knew [she] was going to die and someone needed to know that [she] had been there and who had done it." (Vol. I Tr. at 136.) Moreover, the victim called 911 for assistance during the incident and had to disguise the phone call as a call to her sister in an attempt not to exacerbate the situation, and in an attempt to get information from appellant on where she was and where he was taking her.
 {¶ 38} Accordingly, we conclude that the jury did not "lose its way" in believing the victim's version of events and, therefore, appellant's convictions are not against the manifest weight of the evidence. Thus, we overrule appellant's third assignment of error.
 {¶ 39} In summary, we overrule appellant's first, second, and third assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Travis, JJ., concur.