[Cite as *State v. Horton*, 2015-Ohio-4039.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

　　　Plaintiff-Appellee,              :                No. 14AP-997
                                                           (C.P.C. No. 12CR-4420)

v.                                                   :

                                                              (REGULAR CALENDAR)

Rufus Horton,                                 :

　　　Defendant-Appellant.          :


D E C I S I O N

Rendered on September 30, 2015


*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Clark Law Office*, and *Toki Michelle Clark*, for appellant.


APPEAL from the Franklin County Court of Common Pleas.

BROWN, P.J.

{¶ 1} Defendant-appellant, Rufus Horton, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to jury verdicts finding him guilty of murder with a firearm specification and having a weapon while under disability.

{¶ 2} On August 30, 2012, appellant was indicted on one count of aggravated murder, in violation of R.C. 2903.01, with a firearm specification pursuant to R.C. 2941.145, and one count of having a weapon while under disability, in violation of R.C. 2923.13. The charges arose from the shooting death of Charles Rogers on August 18, 2012.

{¶ 3} Appellant waived his right to a jury trial on the charge of having a weapon while under disability. The case proceeded to trial before a jury on the aggravated murder

and associated firearm specification charge, at which the following evidence was presented.

{¶ 4}   Lindsay Jennings testified that she began dating appellant's brother, Markee Horton, in August 2012.  On August 18, 2012, Markee drove to Jennings' home in a red Mustang.  He told Jennings he was angry because he had just been robbed and asked her to drive him to his mother's house.

{¶ 5}   At Markee's mother's house, Jennings observed appellant give Markee a handgun.  Appellant and Markee had a conversation, but Jennings could not understand what they were saying.  Markee returned to the red Mustang and placed the gun appellant had given him on the floor of the car.   Appellant got into a black car and drove away.

{¶ 6}   Markee instructed Jennings to drive to a house located on North 22nd Street.  Rogers and a woman were seated on the front porch; a black car was parked in front of the house.  Appellant exited the black car and ran to the porch carrying a black handgun.  Markee exited the red Mustang carrying the gun appellant had given him and walked up to the porch.  Jennings heard appellant say "[a]in't nobody going to steal nothing from my brother.  You don't take from my family." (Tr. Vol. I, 138.)  Jennings testified that appellant pointed the gun at Rogers' head and pulled the trigger; however, the "gun didn't go off."  (Tr. Vol. I, 139.)  When the gun failed to fire, Rogers ran away; Markee chased him down the street.  Jennings heard a gunshot and saw Rogers fall to the ground.  Although Jennings did not see Markee pull the trigger, she saw Markee pointing a gun at Rogers.  She admitted she did not know where appellant was at the time the shot was fired.

{¶ 7}   After the shooting, Markee got back in the red Mustang.  According to Jennings, Markee was "upset and scared" and told her "Bitch, drive.  I just shot this man." (Tr. Vol. I, 148.)   Jennings drove Markee to her home; Markee put the gun "somewhere in [Jennings'] backyard."  (Tr. Vol. I, 152.)

{¶ 8}   Several days after the shooting, Markee had Jennings drive him to Krumm Park "so he could get rid of the gun."  (Tr. Vol. I, 155.)  Markee removed the clip from the gun and threw it and the gun into a pond on the park grounds.  According to Jennings, the gun Markee threw into the pond was the same one appellant provided Markee on August 18, 2012.

{¶ 9} Markee stayed at Jennings' home for a few weeks after the shooting. Following his departure, Jennings told the police about the shooting and provided a diagram depicting where Markee had disposed of the gun and the clip.

{¶ 10} Christina Ross testified that, on August 18, 2012, she dropped off her niece at a house located next door to Rogers' house. Ross observed Rogers and his girlfriend on the front porch of Rogers' house. As Ross was about to drive away, a red Mustang "cut in front of me and went into the alley, and then a black car pulled directly in front of me, so I couldn't move." (Tr. Vol. II, 360.) One man exited the red Mustang while another man exited the black car; both men carried guns. The men walked up to Rogers' porch and began arguing with him. The man who drove the red Mustang punched Rogers. Rogers then jumped off the porch and began running down the street. The man who punched Rogers jumped off the porch, "aimed a gun at Charlie, like at his leg part, and tried to fire it, but it didn't go off." (Tr. Vol. II, 373.)

{¶ 11} At the same time, the man from the black car "aimed it, and he shot the gun at Charlie." (Tr. Vol. II, 374.) Ross observed Rogers fall to the ground. She then drove around the block, parked her vehicle, and ran back to the area to check on her niece and Rogers. When she returned, the men involved in the shooting were gone. Ross later spoke with police officers about the incident. At trial, Ross was unable to identify appellant as one of the individuals involved in the shooting.

{¶ 12} Columbus Police Officer Ryan Lee testified that he and his partner were dispatched to the scene of the shooting. Officer Lee observed "a male laying face down on the sidewalk approximately three to four houses south of 199." (Tr. Vol. I, 82.) He approached the victim and "started talking to him to try and assess if he had a pulse, * * * and he was not moving." (Tr. Vol. I, 83.) Officer Lee observed that the victim was breathing and that he had a "small spot of blood in his back." (Tr. Vol. I, 83.) When Officer Lee rolled the victim over, he noticed a gunshot wound to the victim's chest area. After emergency medical personnel transported the man to a nearby hospital, Officer Lee discovered "a spent projectile bullet on the sidewalk directly where I had rolled the victim over." (Tr. Vol. I, 86.)

{¶ 13} Columbus Police Sergeant Joan Schlabach, a member of the crime scene search unit, testified that an unfired .25-caliber cartridge and a spent shell casing from a 9 mm weapon were recovered from the crime scene.

{¶ 14} The parties entered into a stipulation that, if called to testify, Dr. Kenneth Gerston, an employee of the Franklin County Coroner's Office, would testify that Rogers suffered a single fatal gunshot wound to his back. The parties further stipulated that, if called to testify, Columbus Police Lieutenant Larry Yates would testify that the Columbus Police underwater search and rescue unit searched the pond at Krumm Park on September 17, 2012, and found a firearm and clip in the pond using the diagram provided by Jennings.

{¶ 15} Columbus Police Detective Mark Hardy testified that he compared a Hi-Point 9 mm Luger pistol recovered from the pond at Krumm Park to a spent 9 mm Luger casing found at the scene of the shooting. Detective Hardy averred that this comparison revealed "sufficient number of matching characteristics that were individual, so I could say that this casing was fired by the same weapon as this test casing." (Tr. Vol. II, 344.) Detective Hardy thus opined that the gun recovered from the pond at Krumm Park was the same gun that fired the 9 mm shell casing recovered from the shooting scene.

{¶ 16} John C. Briggs, Jr., testified that in June 2013 he was incarcerated at the Franklin County jail on federal charges of drug possession and possession of a firearm and shared a cell with appellant. According to Briggs, appellant averred that he had been charged with murder, and he read Briggs the discovery materials associated with his case. Appellant said his brother, Markee, "got ripped off for some pills" by an individual named Charlie. (Tr. Vol. I, 227.) After learning about the pill theft, Markee went back to his mother's house and "got [appellant], * * * and then from there, they went to Charlie's house." (Tr. Vol. I, 228.) Appellant averred that Markee and his girlfriend were in a red Mustang, while appellant was in a black car. Both appellant and Markee had guns; appellant had a 9 mm, while Markee had a .25 caliber.

{¶ 17} Appellant further related that when he and Markee arrived at Charlie's house, they "got in a scuffle" with Charlie. (Tr. Vol. I, 230.) Markee "went to fire at Charlie, but the gun didn't go off. So Charlie took off running, and that's when [appellant] pulled his gun. He shot at Charlie, and he didn't think he hit him, but he seen a red spot in the back of his shirt." (Tr. Vol. I, 230.) When appellant "found out [Charlie] was dead * * * he said, That's what that bitch gets." (Tr. Vol. I, 230.)

{¶ 18} Briggs testified that appellant first blamed the shooting on Markee. However, he later "broke down" and "bragg[ed]" that he shot Charlie. (Tr. Vol. I, 231.)

Appellant told Briggs that, after the shooting, he and Markee left the scene in separate cars. Appellant later met up with Markee and gave him the gun he used to shoot Charlie. Markee then "took the gun, took it to Krumm Park, [and] threw it in the pond." (Tr. Vol. I, 234.) Appellant told Briggs that when he was first interviewed by police, he told them "Chuffus [appellant's nephew] did it"; however, he later "put it on his brother, Markee." (Tr. Vol. I, 235.)

{¶ 19} Briggs testified that he did not provide the information about his conversation with appellant in an effort to help himself in his federal prosecution. He specifically averred that he was not promised that he would "get out of [his] prison sentence [or] get probation or the case would go away." (Tr. Vol. I, 236.) He acknowledged, however, that he was told by the prosecutor in the instant case that the United States Attorney's Office would be notified that Briggs had been a cooperating witness and that such information would be relayed to the judge presiding over his federal case.

{¶ 20} At the conclusion of trial, the jury returned guilty verdicts on the lesser-included offense of murder and the associated firearm specification. The trial court found appellant guilty of having a weapon while under disability. On November 4, 2014, the trial court issued a judgment sentencing appellant to consecutive sentences of 15 years to life on the murder conviction, 3 years on the firearm specification, and 12 months on the conviction for having a weapon while under disability.

{¶ 21} In a timely appeal, appellant sets forth the following five assignments of error for this court's review:

> [I.] THE VERDICT OF GUILTY IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.
>
> [II.] THE CONVICTION OF APPELLANT FOR MURDER, [WEAPON UNDER DISABILITY], AND GUN SPECIFICATION, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [III.] A PROSECUTOR ENGAGES IN MISCONDUCT DURING REBUTTAL WHEN HE MAKES PERSONAL PROMISES TO THE JURY ABOUT THE AVAILABILITY OF EVIDENCE.

[IV.] THE TRIAL COURT IN A MURDER CASE COMMITS ERROR WHEN IT FAILS TO REQUIRE UNANIMOUS VERDICTS ON THE ELEMENTS OF PRIOR CALCULATION AND DESIGN AND AIDING AND ABETTING, UPON REQUEST BY THE DEFENSE.

[V.] A TRIAL COURT IN A [WEAPON UNDER DISABILITY] CASE WITH A GUN SPECIFICATION COMMITS ERROR WHEN IT FAILS TO MERGE THE TWO CONVICTIONS WHEN THE UNDERLYING FACTS SUPPORT IT.

{¶ 22} We will address appellant's first and second assignments of error together, as they are related. Appellant argues in these assignments of error that his convictions for murder with a firearm specification and having a weapon while under disability were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 23} In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Jones,* 90 Ohio St.3d 403, 417 (2000), citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), and *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). On review for sufficiency, courts do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence would support a conviction. *Id.* at 390. (Cook, J., concurring.) In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319. Consequently, a verdict will not be disturbed based on insufficient evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh,* 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273.

{¶ 24} This court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *Thompkins* at 387. In undertaking this review, we sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the

credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*, citing *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). If we find that the trier of fact clearly lost its way, we must reverse the conviction and order a new trial. *Id.* On the other hand, we will not reverse a conviction so long as the prosecution presented substantial evidence for a reasonable trier of fact to conclude that all the essential elements of the offense were established beyond a reasonable doubt. *State v. Getsy,* 84 Ohio St.3d 180, 193-94 (1998).

{¶ 25} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *See Martin* at 175. However, in conducting our review, we are guided by the principle that the trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). Thus, a reviewing court must defer to the factual findings of the trier of fact regarding the credibility of the witnesses. *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan,* 22 Ohio St.3d 120, 123 (1986), citing *Seasons Coal.* Indeed, the trier of fact is free to believe all, part, or none of the testimony of each witness appearing before it. *State v. Lindsey,* 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 44, citing *State v. Raver,* 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21. If evidence is susceptible of more than one construction, a reviewing court must give it the interpretation that is consistent with the verdict and judgment. *In re B.B.H.,* 10th Dist. No. 14AP-882, 2015-Ohio-2347, ¶ 14, citing *In re Brooks,* 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59.

{¶ 26} In order to convict appellant of murder with a firearm specification, the prosecution was required to prove beyond a reasonable doubt that appellant purposely caused Rogers' death and had a firearm on or about his person and/or used the firearm to facilitate the murder. R.C. 2903.02; 2941.145.

{¶ 27} Appellant claims his conviction was not supported by sufficient evidence because: (1) the jury did not render separate verdicts for principal offender and aider and abettor, (2) no determination was made as to who actually shot Rogers, (3) Jennings unequivocally testified that appellant did not shoot Rogers, (4) Ross did not make an in-

court identification of appellant, and (5) the trial court precluded appellant from offering evidence that would have permitted the jury to more fully assess Briggs' motive for testifying against appellant.

{¶ 28} In his second, third, and fourth arguments, appellant essentially contends he could not be convicted of murder with a firearm specification because it was Markee, and not appellant, who shot Rogers. At the close of trial, the prosecutor argued that appellant could be convicted as the principal offender if the jury concluded that appellant shot Rogers, or as an aider and abettor who was complicit in the crime if the jury concluded that Markee shot Rogers. The trial court instructed the jury that it could find appellant guilty as a principal offender or as an aider and abettor to any or all counts and specifications in the indictment.

{¶ 29} Appellant's argument ignores the evidence establishing that he fatally shot Rogers. Briggs testified that appellant confessed to shooting Rogers with a 9 mm gun; he then gave the gun to Markee who disposed of it in the pond at Krumm Park. Ross testified that the man in the black car shot Rogers; both Jennings and Briggs testified that appellant drove a black car to Rogers' house. Testimony and stipulations about police involvement after the shooting established that the gun used to shoot Rogers was recovered from the pond at Krumm Park. This evidence, if believed, was sufficient to convict appellant as the principal offender in the shooting.

{¶ 30} Appellant's argument also disregards his guilt as a complicitor. "Under the principle of complicity or accomplice liability, an individual may be found guilty if he solicits, aids, abets or conspires with another individual to commit an offense and shares the criminal intent of an individual who commits the principal offense." *State v. Horton,* 10th Dist. No. 13AP-855, 2014-Ohio-2785, ¶ 8, citing *State v. Johnson,* 93 Ohio St.3d 240 (2001), syllabus, and *State v. Moore,* 10th Dist. No. 10AP-10, 2010-Ohio-4322, ¶ 17.[1] "The accomplice's intent may be inferred from the circumstances surrounding the crime." *Id.,* citing *Johnson* at syllabus. "The prohibition against complicity is codified in R.C. 2923.03." *Id.* " 'A charge of complicity may be stated in terms of [R.C. 2923.03], or in terms of the principal offense.' " *Id.,* quoting R.C. 2923.03(F). " 'Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit

---

[1] In *Horton,* this court affirmed Markee Horton's convictions for aggravated murder with a firearm specification and tampering with evidence.

in its commission, even though the indictment is "stated * * * in terms of the principal offense" and does not mention complicity.' " *Id.,* quoting *State v. Herring,* 94 Ohio St.3d 246, 251 (2002).

{¶ 31} Jennings testified that appellant provided Markee a gun and the two conversed immediately before driving to Rogers' house.  She further testified that appellant made a remark about avenging Rogers' alleged robbery of Markee. In addition, Jennings averred that both appellant and Markee confronted Rogers at gunpoint. Jennings also testified that appellant pointed a gun at Rogers' head and pulled the trigger before Markee shot Rogers in the back. This evidence, if believed, was sufficient to convict appellant as a complicitor in Rogers' murder.

{¶ 32} Based on the foregoing, any purported disagreement regarding who fired the fatal shot at Rogers did not render the evidence insufficient to support appellant's conviction for murder with a firearm specification.  The evidence cited above was sufficient to establish that appellant was either the principal offender or a complicitor in Rogers' murder.

{¶ 33} We also reject appellant's first argument, that is, that the evidence was insufficient to convict him of murder with a firearm specification because the jury did not render a verdict finding him guilty as either a principal offender or an aider and abettor. In *State v. Jennings,* 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 42, this court rejected a defendant's contention that the evidence was insufficient to prove aggravated robbery because the jury did not render a verdict for complicity, stating, "[w]hether the jury's verdict refers to Jennings as an aider and abettor is immaterial because '[a] charge of complicity may be stated in terms of [R.C. 2923.03(A)(2) (the complicity statute)] or in terms of the principal offense.'  (R.C. 2923.03(F))."  Thus, the absence of separate verdicts for principal offender and aider and abettor does not render the evidence insufficient to convict appellant of murder with a firearm specification.

{¶ 34} In his fifth argument, appellant contends the trial court erred in denying his request for admission of defendant's exhibit No. 5, a document pertaining to Briggs' federal case which purportedly detailed his violent criminal history. By way of background, at the close of the evidence, defense counsel moved for the admission of Defendant's exhibits Nos. 1-5, "all documents pertaining to John Briggs."  (Tr. Vol. II, 408.)   The first four exhibits contained copies of Briggs' federal indictment, plea

agreement, the government's agreement, and a proffer letter. Defense counsel identified defendant's exhibit No. 5 as "the detention order pending trial." (Tr. Vol. II, 409.) The prosecutor objected to the admission of defendant's exhibit No. 5, arguing that "[t]here's improper character evidence contained within that document that should not go back to the jury. It couldn't have been brought on cross-examination, and it shouldn't go back to them now." (Tr. Vol. II, 411.)

{¶ 35} When questioned by the trial court as to the relevancy of the exhibit, defense counsel initially responded: "Because that was a finding that the Court made that supported the decision that he was to be held without bond." (Tr. Vol. II, 410.) The trial court then asked defense counsel: "But relevant to our considerations here?" In response, counsel averred: "Because, in this case, one of his concerns was trying to reduce the amount of time - - he said he didn't enjoy the fact that he was incarcerated. He wanted to get out of jail as quickly as possible. And one of my contentions would be that that became a concern of his as soon as he was ordered held without the benefit of bail." (Tr. Vol. II, 410.) Defense counsel also cited "the fact that [Briggs] had * * * a weapons-related offense associated with his conviction for which he will be sentenced in a matter of * * * days." (Tr. Vol. II, 411.) The trial court granted defense counsel's request as to the admission of defendant's exhibits Nos. 1-4, but denied the admission of exhibit No. 5 on relevancy grounds.

{¶ 36} In general, " 'a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case,' " and " '[t]he admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court.' " *State v. Clay,* 187 Ohio App.3d 633, 2010-Ohio-2720, ¶ 19 (5th Dist.), quoting *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). Further, " '[a]n appellate court, which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion.' " *Id.*

{¶ 37} Here, in denying admission of the exhibit at issue, the court deemed as not relevant the fact Briggs "was trying to obtain bond and bond was denied." (Tr. Vol. II, 413.) Upon review, we find no abuse of discretion by the trial court in excluding the exhibit on relevancy grounds. Further, even accepting appellant's claim as to its relevancy, he cannot show prejudice resulting from the court's exclusion of the exhibit. Specifically, the record indicates that defense counsel questioned Briggs on cross-

examination regarding the charges against him in the federal case, including possession of a firearm in furtherance of drug trafficking. Defense counsel questioned Briggs with respect to a plea agreement he signed on August 26, 2013, and whether anyone had made promises to him regarding sentencing in the federal prosecution. Briggs acknowledged that his sentencing hearing in the federal case had been delayed due to his testimony in the instant action.

{¶ 38} Defense counsel also questioned Briggs about the exhibit at issue, showing Briggs the "order of detention," reflecting that he was "held without bail, pending trial." (Tr. Vol. I, 252.) Briggs acknowledged the detention order. Defense counsel then asked Briggs: "Would it be safe to assume that you had hoped to be released on bail at that time?" (Tr. Vol. I, 252.) Briggs responded affirmatively. We further note that defense counsel, in arguing for admission of the exhibit, acknowledged that Briggs "already admitted that he was ordered held without bond." (Tr. Vol. II, 413.) Accordingly, in light of the record presented, appellant can demonstrate neither error nor prejudice with regard to the trial court's ruling.

{¶ 39} We turn next to appellant's contention that the evidence was insufficient to support his conviction for having a weapon while under disability. To so convict appellant, the prosecution was required to prove beyond a reasonable doubt that appellant knowingly acquired, had, carried, or used a firearm and had been convicted of a felony offense of violence. R.C. 2923.13(A)(2). At trial, appellant stipulated that he had a prior conviction for a felony offense of violence. Further, despite the conflicting testimony as to whether appellant or Markee fired the fatal shot at Rogers, Jennings' testimony established that appellant possessed a firearm both at his mother's house prior to the shooting and at the time of the shooting. This testimony, along with the stipulation regarding appellant's prior conviction for a felony offense of violence, sufficiently supported appellant's conviction for having weapons while under disability.

{¶ 40} Appellant also argues that his convictions were against the manifest weight of the evidence because: (1) the trial court excluded defendant's exhibit No. 5, and (2) Jennings testified that appellant did not shoot Rogers. To the extent appellant challenges, under his manifest weight argument, the trial court's exclusion of defendant's exhibit No. 5, such challenge fails based upon our determination above that the trial court

did not err in its ruling to exclude the exhibit. We therefore only consider whether appellant's convictions were against the manifest weight of the evidence.

{¶ 41} Appellant essentially challenges Briggs' credibility. Indeed, appellant refers to Briggs as the "infamous jailhouse informant" who offered testimony "to save his own soul and get out of jail early." (Appellant's Brief, 11.) While Briggs arguably may have had ulterior motives for testifying against appellant, the jury observed Briggs' demeanor, gestures, and voice inflections and heard his testimony about his pending federal case and the prosecutor's assurance that he would inform federal authorities of Briggs' cooperation in the present case. Defense counsel thoroughly cross-examined Briggs about his criminal history, his pending federal case, and the potential benefit of providing testimony in the instant case. Defense counsel also raised these issues in closing argument. Thus, to the extent the jury believed Briggs' testimony, it did so with full knowledge of any potential credibility issues.

{¶ 42} In addition, contrary to appellant's assertion, appellant's convictions were not against the manifest weight of the evidence merely because Jennings testified that appellant did not shoot Rogers. As noted above, the jury could have convicted appellant as the principal offender based upon the testimony offered by Briggs and Ross. Ross testified that the man in the black car shot Rogers, and it is undisputed that appellant drove a black vehicle to and from Rogers' house. Briggs testified that appellant confessed to fatally shooting Rogers. Moreover, the jury could have convicted appellant as a complicitor in Rogers' murder based upon Jennings' testimony that appellant provided Markee with a gun and later, with Markee, confronted Rogers at gunpoint and fired shots at him. As noted above, the jury was free to believe all, part, or none of the testimony provided by Ross, Briggs, and Jennings.

{¶ 43} After a thorough review of the record, we cannot say that the jury lost its way when it found appellant guilty of murder with a firearm specification and having a weapon while under disability. Accordingly, appellant's convictions were not against the manifest weight of the evidence.

{¶ 44} Appellant's first and second assignments of error are overruled.

{¶ 45} In his third assignment of error, appellant contends that a statement made by the prosecutor in his rebuttal closing argument constituted prosecutorial misconduct requiring reversal of appellant's convictions.

{¶ 46} " 'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' " *State v. Oteng,* 10th Dist. No. 14AP-466, 2015-Ohio-1231, ¶ 81, quoting *State v. Smith,* 14 Ohio St.3d 13, 14 (1984). "The touchstone of this analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 91, quoting *Smith v. Phillips,* 455 U.S. 209, 219 (1982). " 'A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty.' " *State v. Brooks,* 10th Dist. No. 06AP-74, 2006-Ohio-5784, ¶ 13, quoting *State v. Benge,* 75 Ohio St.3d 136, 141 (1996), citing *State v. Loza,* 71 Ohio St.3d 61, 78 (1994).

{¶ 47} Prosecutors are afforded considerable latitude in closing arguments. *State v. Dillon,* 10th Dist. No. 04AP-1211, 2005-Ohio-4124, ¶ 50, citing *State v. Ballew,* 76 Ohio St.3d 244, 255 (1996). A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning. *Noling* at ¶ 94, citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974). Rather, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred. *Id.,* citing *State v. Frazier,* 73 Ohio St.3d 323, 342 (1995). Moreover, "[i]n closing argument, a prosecutor may comment on ' "what the evidence has shown and what reasonable inferences may be drawn therefrom." ' " *Dillon* at ¶ 50, quoting *State v. Lott,* 51 Ohio St.3d 160, 165 (1990), quoting *State v. Stephens,* 24 Ohio St.2d 76, 82 (1970).

{¶ 48} On direct examination, the prosecutor asked Briggs if he had seen appellant's discovery materials while the two shared a jail cell. Briggs stated that appellant read the materials to him because "my reading is not good." (Tr. Vol. I, 226.) He acknowledged that he had "an opportunity to see the discovery, but [appellant] would discuss it with [him]." (Tr. Vol. I, 227.)

{¶ 49} On cross-examination, defense counsel posed a general question about "how the system operates after an individual has been charged [with a crime]." (Tr. Vol. I, 237.) Briggs responded that discovery materials provided to criminal defendants typically include witness statements, police summaries, photographs, and video and audio recordings. He acknowledged that an individual could become familiar with the details of a case simply by reviewing the discovery materials.

{¶ 50} In his initial closing argument, the prosecutor conceded that Briggs had access to appellant's discovery materials. However, the prosecutor argued that the detailed testimony Briggs provided at trial was not the result of Briggs' examination of appellant's discovery materials; rather, Briggs' testimony stemmed from appellant's candid confession to the crime.

{¶ 51} In his closing argument, defense counsel maintained that Briggs' trial testimony was based upon his review of appellant's discovery materials:

> Now, remember, Mr. Briggs has been through this process before. He knows what the discovery is. And as he testified, the discovery gives you witness names, statements, recordings, photographs, summaries of interviews. He admitted one can look at that material and develop a familiarity about a case, based upon their review.
>
> If you look at the discovery, you can develop what appears to be a working knowledge about someone's case, even though it's not your case. He had access to the discovery in [appellant's] case. He reviewed the discovery in [appellant's] case. That's why he's able to give you the details that he did.

(Tr. Vol. II, 514.)

{¶ 52} On rebuttal, the prosecutor stated:

> Going back to John Briggs. [Defense counsel] asserts he knows the things he does because he read [appellant's] discovery, and you heard what Ms. Jennings testified to.
>
> And I would submit to you, we don't know that any of the statements of any of the witnesses were actually in the Defendant's discovery. I promise you there were no recordings in his discovery, because we at the prosecutor's office do not turn that over to defendants. Their attorney gets it; it doesn't go to the jail.

(Tr. Vol. II, 530-31.)

{¶ 53} During a bench conference following closing arguments, defense counsel objected to the prosecutor's statement and moved for a mistrial. Defense counsel argued that the prosecutor's statement arose from his personal knowledge of the state's investigation and not from evidence in the record. The trial court denied the motion for mistrial without explanation.

{¶ 54} On appeal, appellant argues that the prosecutor's "promise" that the discovery materials provided to appellant while he was in jail did not include audio or video recordings provided an "unfair advantage to the State of Ohio in terms of credibility," thus denying him a fair trial.  (Appellant's Brief, 13.)

{¶ 55} Upon review of the record, we conclude that the prosecutor's "promise" comment did not constitute prosecutorial misconduct requiring reversal of appellant's convictions.   We note initially that appellant does not explain how the prosecutor's comment enhanced the state's credibility.  We decline to develop any further argument on his behalf.  *See Catanzarite v. Boswell,* 9th Dist. No. 24184, 2009-Ohio-1211, ¶ 16 ("[i]t is not the function of this court to construct a foundation for [the appellant's] claims").

{¶ 56} Further, taken in its proper context, the comment was made in response to defense counsel's insinuation that appellant's discovery materials included video and audio recordings.  Briggs did not expressly testify that appellant's discovery materials included video and audio recordings.  Rather, Briggs' testimony that video and audio recordings are included in discovery materials was made only in the context of his own experience as a criminal defendant. Thus, the prosecutor's statement constituted a fair comment on Briggs' testimony and inferences to be drawn therefrom.   Further, " '[i]t is well settled that a party cannot complain of [an] opponent's argument to the jury, where it amounts only to a reply in kind to matters argued' by the complaining party."  *State v. Hopkins,* 6th Dist. No. 05AP-338, 2006-Ohio-232, ¶ 31, quoting *State v. Roland,* 8th Dist. No. 38393 (Mar. 15, 1979).

{¶ 57} Moreover, the trial court instructed the jury that closing arguments were not to be considered as evidence, and the jury is presumed to follow these instructions. *State v. Trewartha,* 10th Dist. No. 05AP-513, 2006-Ohio-5040, ¶ 21, citing *State v. Raglin,* 83 Ohio St.3d 253, 264 (1998); *State v. Smith,* 3d Dist. No. 6-14-14, 2015-Ohio-2977, ¶ 68, citing *State v. Twyford,* 94 Ohio St.3d 340, 356 (2002).  Additionally, and most importantly, given the strength of the prosecution's evidence, the prosecutor's comment, even if improper, did not prejudicially affect appellant's substantial rights. *See State v. Hunt,* 10th Dist. No. 12AP-103, 2013-Ohio-5326, ¶ 22 ("Given the evidence presented, we cannot find prejudice even if the prosecutor's closing arguments are deemed to constitute misconduct.").

{¶ 58} Appellant's third assignment of error is overruled.

{¶ 59} Under the fourth assignment of error, appellant contends the trial court erred in denying appellant's request for a jury instruction requiring unanimous verdicts "on the elements of prior calculation and design, and for aiding and abetting." (Appellant's Brief, 14.)   Appellant argues that because the state presented alternative theories of guilt,[2] the trial court was required to instruct the jury that a finding of guilt would have to be unanimous as to one of the alternative theories.  Appellant claims that in the absence of such an instruction, a less than unanimous verdict was possible since the jurors could have convicted appellant based upon different underlying theories.

{¶ 60} Appellant's argument that prejudicial error resulted from the trial court's failure to instruct the jury that its verdict must be unanimous on the element of prior calculation and design is unavailing.   Prior calculation and design is an element of aggravated murder under R.C. 2903.01(A). Because appellant was acquitted of aggravated murder, any error in the jury instructions pertaining to the element of prior calculation and design is harmless.  Crim.R. 52(A); *see State v. Hiles,* 4th Dist. No. 87 CA 19 (Jan. 27, 1989) (claim challenging sufficiency of evidence of aggravated murder rendered harmless based on acquittal).   Moreover, the record reveals that the trial court properly defined prior calculation and design and instructed the jury that its verdict on aggravated murder must be unanimous.

{¶ 61} Turning to appellant's juror unanimity argument on "aiding and abetting," (Appellant's Brief, 14), we note that, at trial, defense counsel requested that the trial court instruct the jury that its verdict should be unanimous as to whether appellant was a principal offender or an aider and abettor.  We thus construe appellant's argument as challenging the trial court's denial of this request.

{¶ 62} In *Horton,* this court rejected the precise argument appellant sets forth in the present case.  There, the defendant (appellant's brother, Markee) argued that the trial court erred by failing to instruct the jury that it was required to reach a unanimous verdict as to whether he was guilty of aggravated murder as the principal offender or as an aider and abettor.  We concluded that "the lack of a specific instruction that the jury must reach

---

[2] Appellant contends the state set forth four alternative theories of guilt: (1) appellant shot Rogers with prior calculation and design, and Markee aided and abetted, (2) Markee shot Rogers with prior calculation and design, and appellant aided and abetted, (3) Markee and appellant both acted with prior calculation and design, and (4) Markee and appellant both aided and abetted only.

a unanimous verdict as to whether [Markee] was the principal offender or an aider and abettor does not constitute plain error." *Id.* at ¶ 14.

{¶ 63} In so concluding, we relied principally on *State v. Stojetz,* 84 Ohio St.3d 452 (1999), and *State v. Husband,* 10th Dist. No. 02AP-1097, 2003-Ohio-2279. As we noted in *Horton,* the Supreme Court of Ohio held in *Stojetz* that the trial court did not commit plain error by failing to specifically instruct the jury that it was required to reach a unanimous verdict as to whether the defendant was the principal offender or an aider and abettor to the crime of aggravated murder because, under the facts of the case, the defendant could have been convicted as a principal offender under R.C. 2903.01(A) or as an aider and abettor under R.C. 2923.03(A). *Horton* at ¶ 13-14. As we further noted in *Horton,* we concluded in *Husband* that the trial court did not err by failing to instruct the jury separately on principal and accomplice liability on the charge of felonious assault because there was sufficient evidence to conclude that the defendant acted as the principal offender in the felonious assault and that he also acted with the necessary culpability in aiding and abetting others in inflicting serious physical harm on the victim. *Horton* at ¶ 13.

{¶ 64} Applying *Stojetz* and *Husband*, we reasoned:

> There was conflicting evidence as to whether [Markee] fired the shot that killed Rogers. However, uncontroverted testimony from Jennings demonstrated that [Markee] went to his mother's house to speak with Rufus and retrieve a gun before traveling to Rogers' house. This evidence, if believed, demonstrated that, if appellant was not the principal offender, he aided and abetted his brother in the commission of the crime. * * * Moreover, although the trial court did not expressly instruct the jury that it was required to be unanimous as to whether [Markee] was the principal offender or an aider and abettor, the court generally instructed the jury that it was required to reach a unanimous verdict on each charge.

*Horton* at ¶ 14.

{¶ 65} The same reasoning employed in *Horton* applies in the present case. At trial, conflicting evidence was presented as to whether appellant or Markee fired the shot that killed Rogers. Briggs testified that appellant confessed to shooting and killing Rogers, while Jennings testified that Markee fatally shot Rogers. Regardless of who fired

the fatal shot, uncontroverted testimony from Jennings established that appellant provided Markee with a gun and that he and Markee together confronted Rogers at gunpoint. This evidence, if believed, established that if appellant was not the principal offender, he aided and abetted Markee in the commission of the murder. Moreover, as in *Horton,* although the trial court in the present case did not expressly instruct the jury that it was required to be unanimous as to whether appellant was the principal offender or an aider and abettor, it generally instructed the jury that it was required to reach a unanimous verdict on the murder charge and firearm specification. Accordingly, the trial court did not err in refusing to instruct the jury that it was required to reach a unanimous verdict as to whether appellant was the principal offender or an aider and abettor.

{¶ 66} Appellant's fourth assignment of error is overruled.

{¶ 67} In his fifth assignment of error, appellant contends the trial court erred in sentencing him separately for having weapons while under disability and for the firearm specification attached to the murder offense. Appellant argues that because "[t]he same gun was used for the commission of both criminal infractions," the having weapons while under disability and the firearm specification should merge as allied offenses of similar import pursuant to R.C. 2941.25(A). (Appellant's Brief, 17.)

{¶ 68} R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." In *State v. Ford,* 128 Ohio St.3d 398, 2011-Ohio-765, paragraph two of the syllabus, the Supreme Court of Ohio held that "[p]enalties for a specification and its predicate offense do not merge under R.C. 2941.25." The court reasoned that a firearm specification does not merge because it is "contingent upon an underlying felony conviction" and "merely a sentencing provision that requires an enhanced penalty upon certain findings." *Id.* at ¶ 16. Thus, "the criminal offense of discharging a firearm at or into a habitation under R.C. 2923.161 and a firearm specification as defined in R.C. 2941.145 are not allied offenses of similar import as defined in R.C. 2941.25, because a firearm specification is a penalty enhancement, not a criminal offense." *Id.* at paragraph one of the syllabus.

{¶ 69} Applying *Ford,* the court in *State v. Hayes,* 2d Dist. No. 2014-CA-27, 2014-Ohio-5362, rejected a defendant's contention that his having weapons while under

disability offense and the firearm specification attached to his possession of heroin offense should merge as allied offenses of similar import. *Id.* at ¶ 19-26. *See also State v. Stephenson,* 12th Dist. No. CA2014-05-073, 2015-Ohio-233, ¶ 42-45 (carrying a concealed weapon offense and firearm specification attached to aggravated possession of drugs offense not allied offenses of similar import as defined in R.C. 2941.25).

{¶ 70} Based on the foregoing, we conclude that the having weapons while under disability offense and the firearm specification attached to the offense of murder are not allied offenses of similar import as defined in R.C. 2941.25, because the firearm specification is a penalty enhancement, not a separate criminal offense. *See Ford.* The trial court thus did not err by separately sentencing appellant for having weapons while under disability and the firearm specification attached to the murder offense.

{¶ 71} The fifth assignment of error is overruled.

{¶ 72} Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and HORTON, JJ., concur.

_____